UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JEFFREY EDWARD HOFFMAN, *et al.*,

    Plaintiffs,

v.

THOMAS R. LLOYD,

    Defendant.

No. C-12-0198 EMC

**ORDER ADOPTING BANKRUPTCY COURT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Currently pending before the Court are the bankruptcy court's proposed findings of fact and conclusions of law regarding the damages owed Thomas R. Lloyd by, *inter alia*, Jeffrey Edward Hoffman. Mr. Hoffman is the only party who has submitted objections to the proposed findings of fact and conclusions of law. Having considered the proposed findings of fact and conclusions of law, Mr. Hoffman's objections thereto, and all evidence of record, the Court hereby adopts in full the bankruptcy court's proposed findings and conclusions.

## I.   FACTUAL & PROCEDURAL BACKGROUND[1]

This case involves a real estate transaction between Mr. Lloyd and Mr. Hoffman. In 2003, Mr. Lloyd was in default on his mortgage and faced foreclosure on his residence at 940 Elizabeth Street, San Francisco. *See* Docket No. 1, Ex. 5 (USBC Docket No. 239) (Prop. FF&CL at 2). At

---

[1] The factual and procedural background discussed below is based on the summary background provided by the bankruptcy court in its proposed findings of fact and conclusions of law. The Court emphasizes that the bankruptcy court's summary does not itself constitute any proposed finding of fact or conclusion of law; rather, the summary is simply a synopsis of prior findings and conclusions made by the bankruptcy court (and affirmed on appeal) and prior proceedings before the bankruptcy court.

that time, Mr. Lloyd met Mr. Hoffman who offered to help Mr. Lloyd. *See id.* Mr. Hoffman and Mr. Lloyd agreed that Mr. Lloyd would transfer title of the residence to Mr. Hoffman, who would then lease the property back to Mr. Lloyd with the option to repurchase. *See id.* This agreement was formalized by three separate contracts: a purchase-sale agreement, a lease, and an option to repurchase. *See id.* The sale of Mr. Lloyd's home closed in August 2003, when Mr. Hoffman recorded the deed, paid Mr. Lloyd $20,000, and took out a new mortgage on the property to repay Mr. Lloyd's outstanding loans. *See id.* at 3.

In 2004, Mr. Lloyd fell behind on his lease payments to Mr. Hoffman. Mr. Hoffman subsequently filed an unlawful detainer action against Mr. Lloyd that settled without trial in August 2004. *See id.* Pursuant to the settlement agreement, Mr. Hoffman extended the option to repurchase for 90 days and Mr. Lloyd granted Mr. Hoffman a full release of all known and unknown claims. *See id.* After the settlement was reached, Mr. Hoffman encumbered the property with a second loan of $110,000 from Norcal Financial, Inc. ("Norcal"), an entity purportedly owned and controlled by Mr. Hoffman. *See id.* Mr. Lloyd was once again unable to exercise his option to repurchase his former residence.

On October 15, 2004, Mr. Lloyd filed a chapter 11 petition in the United States Bankruptcy Court for the Northern District of California. *See id.* Three days later, Mr. Lloyd sent Mr. Hoffman notice of rescission of the grant deed pursuant to the California Home Equity Sales Contracts Act ("HESCA"). *See id.* HESCA is designed to protect sellers of homes subject to foreclosure. Under California Civil Code § 1695.5(a), the statute requires that a buyer of a foreclosed-upon property must insert a right-to-rescind notice in "immediate proximity" to the area reserved for the seller's signature. Cal. Civ. Code § 1695.5(a). Although the statute provides a short period of five business days for cancellation, the period does not begin to run until such notice is complied with. *See id.* § 1695.5(d).

After receiving the notice from Mr. Lloyd, Mr. Hoffman filed an action in state court, seeking to cancel Mr. Lloyd's notice and to recover damages for slander of title. *See* Docket No. 1 (USBC Docket No. 239) (Prop. FF&CL at 4). Mr. Hoffman then moved the bankruptcy court for relief from the bankruptcy automatic stay in order to litigate the case in state court. The bankruptcy

1 court granted the motion. *See id.* After the state court denied Mr. Lloyd's attempts to assert his
2 HESCA arguments against Mr. Hoffman, Mr. Lloyd removed the matter to the bankruptcy court in
3 June 2005. *See id.* The bankruptcy court divided the litigation into three phases. *See id.* at 5. In
4 Phase I, the bankruptcy court would consider the validity of the general release in Mr. Hoffman and
5 Mr. Lloyd's prior settlement agreement with respect to Mr. Lloyd's claims. *See id.* In Phase II, the
6 court would address Mr. Lloyd's right to cancel the purchase-sale agreement with Mr. Hoffman due
7 to potential insufficiency of notice under HESCA. *See id.* Finally, in Phase III, the court would
8 address the question of damages. *See id.*

9 At Phase I, the bankruptcy court held that the general release of known and unknown claims
10 in Mr. Lloyd and Mr. Hoffman's settlement agreement did not preclude Mr. Lloyd from advancing
11 his HESCA claims as waiver of Mr. Lloyd's rights under HESCA would contravene public policy.[2]
12 *See id.* At Phase II, the court determined that the purchase-sale agreement did not contain sufficient
13 notice of the seller's right to rescind. As a result, Mr. Lloyd's right to rescind had not expired, the
14 rescission of the purchase-sale agreement was valid, and Mr. Hoffman was required to return title
15 and possession of the property to Mr. Lloyd. *See id.* The court further held that the additional debt
16 encumbering the property exceeded any benefit conferred by Mr. Hoffman to Mr. Lloyd; thus Mr.
17 Lloyd was not required to make any payments to Mr. Hoffman prior to regaining title.[3] *See id.* at 5-
18 6. The court's judgment was entered on April 30, 2007,[4] and was appealed by Mr. Hoffman. *See id.*
19 at 6. The Phase I and II decisions were affirmed on appeal, both by the district court and the Ninth
20 Circuit. *See Hoffman v. Lloyd*, Nos. C 06-2416 MHP, C 07-2417 MHP, 2008 WL 298820, at *1
21 (N.D. Cal. Feb. 1, 2008); *Mr. Hoffman v. Mr. Lloyd*, 572 F.3d 999, 1003 (9th Cir. 2009).

22 Thereupon, the bankruptcy court turned to Phase III which would address damages. Mr.
23 Lloyd sought damages for lost equity in the property (after its sale in 2009 for $945,000), damages
24 for loss of use of the property, and attorney's fees. *See* Docket No. 1 (USBC Docket No. 239)

---

[2] *See* Docket No. 1, Ex. 2 (USBC Docket No. 59) (Phase I decision).

[3] *See* Docket No. 1, Ex. 3 (USBC Docket No. 116) (Phase II decision).

[4] *See* Docket No. 1, Ex. 4 (USBC Docket No. 117) (judgment).

(Prop. FF&CL at 6). In an amended pleading, Mr. Lloyd added a claim for damages related to another piece of real property, this one located in Lagunitas, California. *See id.* In 2003, Mr. Lloyd had transferred the Lagunitas property to Mr. Hoffman with the intent for the deed to be used solely as a security interest. *See id.* at 7. Mr. Hoffman later sold the Lagunitas property for a net profit which he did not pay to Mr. Lloyd. Thus, Mr. Lloyd sought to recover the value of Lagunitas property less all secured claims. *See id.* In addition to damages claims against Mr. Hoffman, Mr. Lloyd's amended pleading asserted claims for damages against several of Mr. Hoffman's associates and corporations purportedly under Mr. Hoffman's ownership and control, including Norcal. *See id.*

On March 1, 2011 – before any decision on the merits had been made on the various damages claims – Mr. Lloyd filed a motion to strike the answers to his amended pleadings, in particular, answers which had been filed by Mr. Hoffman and those corporations purportedly under his control. *See* USBC Docket No. 225-29 (motion and supporting papers). In the motion, Mr. Lloyd argued that the answers of the corporations should be stricken because, since their attorneys had withdrawn as counsel in September 2009 and May 2010, *see* USBC Docket Nos. 193, 221 (orders granting motions to withdraw), the corporations had not obtained counsel to represent them. As for Mr. Hoffman, Mr. Lloyd argued that his answer should be stricken because he had failed to participate in discovery; more specifically, he had failed to appear for a deposition that had been noticed for July 7, 2010, and, subsequently, he failed to respond to communications from Mr. Lloyd about his failure to appear. *See* USBC Docket No. 227 (Mot. at 7-8, 10).

After Mr. Lloyd filed his motion to strike, neither Mr. Hoffman nor the corporations filed a written opposition in response. In addition, Mr. Hoffman and the corporations failed to appear at the hearing on the motion to strike, which was held on April 1, 2011. *See id.* at 7-8. As a result of Mr. Hoffman's failure to oppose, the bankruptcy court granted Mr. Lloyd's motion to strike and entered the defendants' default. *See* USBC Docket No. 232 (order). The bankruptcy court also set a hearing date (June 28, 2011) for Mr. Lloyd's request for default judgment, at which time Mr. Lloyd would be required to prove up his damages. *See* Docket No. 1, Ex. 5 (USBC Docket No. 239) (Prop. FF&CL at 8).

After Mr. Lloyd's counsel left the courtroom and all other matters on the calendar had been heard, Mr. Hoffman made an appearance at the April 1 hearing. The bankruptcy court advised Mr. Hoffman that the motion to strike had been granted because he had failed to file a written opposition and to make a timely appearance at the hearing. The court further advised Mr. Hoffman of the date and time of the prove-up hearing. *See id.* Finally, the court explained to Mr. Hoffman that "he could file a motion for reconsideration of the order granting the motion to strike, [and] that there was time to prepare such a motion and have it heard before the June 28th default hearing." *Id.* The court informed Mr. Hoffman that such a motion should detail "why Mr. Hoffman did not file [a] timely written opposition to Mr. Lloyd's motion to strike, why he was late to the hearing on the motion, and why the motion to strike his answer should be denied." *Id.* Despite the bankruptcy court's explicit advice, Mr. Hoffman failed to file any motion with the court to reconsider or otherwise set aside the order. *See id.*

As indicated above, the prove-up hearing on damages was held on June 28, 2011. Both Mr. Lloyd and Mr. Hoffman appeared at the hearing. Mr. Hoffman appeared without counsel and cross-examined Mr. Lloyd's witnesses. *See id.* at 8-9. Subsequently, on November 4, 2011, the bankruptcy court issued its proposed findings of fact and conclusions of law. The court proposed that Mr. Lloyd be awarded total damages in the amount $842,518. *See id.* at 20-21.

The bulk of the damages were attributed to Mr. Hoffman. The court found Mr. Hoffman liable to Mr. Lloyd for actual damages ($294,763) with respect to the Elizabeth Street and Lagunitas properties and exemplary damages ($271,881) with respect to the Elizabeth Street property ($271,881). The bankruptcy court determined that exemplary damages were warranted because Mr. Hoffman had exhibited "blatant bad faith" by taking out a sham loan from Norcal. *Id.* at 16. The court explained that Norcal was a company that Mr. Hoffman controlled and that no funds were actually advanced from Norcal to Hoffman. *See id.* at 3. Instead, the loan was taken out not to pay off the money that Mr. Lloyd owed on the property but rather to increase the amount Mr. Lloyd would have to pay to exercise the option to repurchase the property. *See id.* at 16. Finally, the court found Mr. Hoffman liable for attorneys' fees ($275,874) with respect to the Elizabeth Street property. *See id*. at 20.

In addition to Mr. Hoffman, the bankruptcy court found another individual and two companies liable for damages. More specifically, the bankruptcy court found Norcal jointly and severally liable with Mr. Hoffman for actual losses with respect to the Elizabeth Street property ($32,627). *See id.* Asher Robertson, a real estate broker who introduced Mr. Hoffman to Mr. Lloyd, was found jointly and severally liable alongside Mr. Hoffman for actual damages with respect to both the Elizabeth Street and Lagunitas properties ($236,763). *See id*. at 20-21. Finally, H&B Properties, another corporation under Mr. Hoffman's control that oversaw Mr. Hoffman and Mr. Lloyd's agreement in regards to the Lagunitas property, was found jointly and severally liable with Mr. Hoffman for actual damages with respect to the Lagunitas property in ($204,136). *See id*. at 21.

The bankruptcy court's proposed findings of fact and conclusions of law are now presented to this Court for review.

## II. DISCUSSION

A. Legal Standard

Under federal law,

> bankruptcy courts have jurisdiction to hear a broad array of issues, but the exercise of their jurisdiction to enter any *final* order or judgment is limited to (1) "cases under title 11"; (2) "core" bankruptcy proceedings that either "arise under" the Bankruptcy Code or "arise in" a case under the Code; or (3) cases in which all interested parties "consent" to the bankruptcy court having jurisdiction to enter a final order in a matter that is "related to" a case under the Bankruptcy Code.

*Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1130 (9th Cir. 2010) (emphasis added). Because the instant case does not fall into any of the above categories and is instead a non-core proceeding, the bankruptcy court could not enter any findings of fact and conclusions of law itself but rather was limited to submitting proposed findings and conclusions to this Court. Under 28 U.S.C. § 157(c)(1), this Court has the authority to enter a final order of judgment "after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

"Although new hearings are not required for de novo review, a review of the record is required." *In re Castro*, 919 F.2d 107, 108 (9th Cir. 1990) (noting that "the district court could not have considered the actual testimony in the bankruptcy court, because the reporter's transcript had

1  not yet been prepared when the district court judgment was entered"). In the instant case, Mr.
2  Hoffman has asked for hearings on some but not all of his objections. The Court concludes that no
3  hearing is required on any issue.

4  B.  Bankruptcy Court's Proposed Findings and Conclusions

5  The Court has reviewed the record and, applying *de novo* review, agrees in full with the
6  bankruptcy court's proposed findings of facts and conclusions of law and thereby adopts those
7  findings and conclusions as its own. In reaching this ruling, the Court has taken into account the
8  objections raised by Mr. Hoffman to the bankruptcy court's proposed findings and conclusions. The
9  Court finds these objections without merit for the reasons discussed below.

10  C.  Service of Process

11  Mr. Hoffman objects first to the proposed findings of fact and conclusions of law on the
12  basis of improper service. More specifically, Mr. Hoffman asserts that the two corporations which
13  the bankruptcy court found liable for damages – *i.e.*, Norcal and H&B – were not properly served
14  with the proposed findings and conclusions. *See* Docket No. 1, Ex. 7 (USBC Docket No. 241) (Obj.
15  at 2).

16  The Court finds the objection without merit. Mr. Hoffman is making an argument on behalf
17  of the corporations but he has no authority to make such an argument. The corporations are legal
18  entities separate from Mr. Hoffman. Thus, he lacks standing to challenge any damages that the
19  bankruptcy court proposed be assessed against the corporations. Furthermore, the corporations may
20  appear before this Court "only through a member of the bar of this Court." Civ. L.R. 3-9(b); *see*
21  *also* Bankr. L.R. 9010-1(a) (providing that "[a] corporation . . . may not appear as a party in an
22  adversary proceeding or a contested matter . . . except through counsel admitted to practice in this
23  District"). Mr. Hoffman is not an attorney, let alone a member of the bar of this Court.[5] Therefore,
24  he is not entitled to represent the corporations. Finally, the Court notes that, even if Mr. Hoffman
25  could make an argument on the corporations' behalf, the argument of improper service lacks merit.

---

[5] To the extent Mr. Hoffman suggests that the corporations were not properly served with other documents (whether by the bankruptcy court or Mr. Lloyd), he runs into the same problems identified above.

1  The proposed findings and conclusions were mailed to the address that was supplied by the
2  corporations' counsel upon their withdrawal. *See* USBC Docket Nos. 193, 221 (orders granting
3  motions to withdraw); USBC Docket No. 238 (proof of service for proposed findings of fact and
4  conclusions of law).

5  In a case management statement filed before this Court, Mr. Hoffman suggests that improper
6  service has been a problem not only with respect to the corporations but also with respect to him,
7  more specifically, after his counsel withdrew from representation. *See* Docket No. 10 (statement).
8  The Court finds this argument without merit because, as noted above, there is no evidence that Mr.
9  Hoffman has been served at any address other than the one supplied by his attorneys upon their
10 withdrawal. *See* USBC Docket Nos. 193, 221 (orders granting motions to withdraw). Mr. Hoffman
11 never notified the bankruptcy court that the address should not have been used and another address
12 used in its stead.

D.  Default

14 Mr. Hoffman's next objection is that the proposed findings and conclusions should be given
15 no weight because they are predicated on an entry of default which was improper. As indicated
16 above, Mr. Lloyd argued to the bankruptcy court that Mr. Hoffman's default should be entered
17 because he had failed to appear for a deposition on July 7, 2010. Mr. Hoffman contends that he had
18 no obligation to appear for the deposition because (1) Mr. Lloyd never met and conferred with him
19 prior to issuing the deposition notice; (2) he never received the deposition notice; (3) the deposition
20 was scheduled to take place after the discovery cut-off; and (4) his deposition had already been
21 taken by Mr. Lloyd, which precluded a second deposition. Accordingly, Mr. Hoffman argues that
22 the default was improper. Mr. Hoffman further argues that, even if he had improperly failed to
23 appear for the deposition, it was too severe a sanction for the bankruptcy court to enter his default as
24 a result. The Court finds each of these contentions without merit.

25 First, even if Mr. Lloyd failed to meet and confer with Mr. Hoffman before issuing the
26 deposition notice, Mr. Lloyd did – after Mr. Hoffman failed to appear for the deposition – contact
27 Mr. Hoffman about the deposition and his failure to appear. Mr. Lloyd asked that Mr. Hoffman
28 contact him to discuss the situation, but Mr. Hoffman failed to respond. *See* USBC Docket No. 228

(Drummond Decl. ¶ 4 & Ex. C) (letter, dated December 13, 2010). By contacting Mr. Hoffman prior to moving for entry of default, Mr. Lloyd essentially satisfied the purpose behind the meet-and-confer requirement.

Second, even though Mr. Hoffman claims that he did not receive the deposition notice, no blame can be placed on Mr. Lloyd. Mr. Lloyd sent the deposition notice to the address that was supplied by Mr. Hoffman's counsel upon their withdrawal from representation. *See* USBC Docket No. 228 (Drummond Decl. ¶ 2 & Ex. A) (deposition notice). Furthermore, the notice was sent several weeks in advance of the scheduled deposition date.

Third, it is true that the date of the deposition – scheduled for July 7, 2010 – was outside the discovery cut-off date (February 25, 2008) provided for in the bankruptcy court's trial scheduling order of November 7, 2007. *See* USBC Docket No. 133 (Order at 1). However, it is clear from the record that scheduling order, although never formally vacated or replaced, eventually had no force in the litigation because of subsequent events. The scheduling order was the order governing Phase III and provided for a trial date of March 25, 2008. *See id.* However, no trial began on that date. Indeed, at the beginning of April 2008, a hearing was held on a motion to amend that had been filed by Mr. Lloyd.

Fourth, there is no dispute that, prior to the deposition scheduled for July 7, 2010, Mr. Lloyd had already deposed Mr. Hoffman. That deposition appears to have taken place in December 2005, *i.e.*, shortly before the Phase I trial. Under Federal Rule of Civil Procedure 30, a party must obtain leave of court to depose a person a second time. *See* Fed. R. Civ. P. 30(a)(2)(A)(ii); U.S. Bankr. R. 7030 (providing that Federal Rule of Civil Procedure 30 governs in adversary proceedings). It does not appear that Mr. Lloyd ever expressly asked leave of the bankruptcy court to take Mr. Hoffman's deposition a second time. However, given the bankruptcy court's splitting of the case into three trial phases with discovery in each phase, it is extremely unlikely that the court intended to allow for only one deposition of Mr. Hoffman in conjunction with Phase I. Moreover, if Mr. Hoffman legitimately believed a second deposition was improper pursuant to Rule 30 – or based on any of the other arguments above – then he should have moved for a protective order to prevent the deposition from taking place, which he did not do. Even if Mr. Hoffman's failure to move for a protective order

9

could be excused, that does not explain why Mr. Hoffman failed to bring up any of the arguments above in response to Mr. Lloyd's motion to strike and for entry of default. Mr. Hoffman not only failed to file a written opposition to Mr. Lloyd's motion but also failed to make a timely appearance at the hearing, at which time he could have made any of the arguments above.

Mr. Hoffman contends that, even if his failures could be the basis for some sort of sanction, that does not justify the bankruptcy court's imposition of the harshest sanction available, *i.e.*, the default. Arguably, a single failure to appear for a deposition should not give rise to the harshest sanction of a default. *See Wanderer v. Johnson*, 910 F.2d 652, 656 (9th Cir. 1990) (stating that, before a court imposes dismissal or default as a sanction, it should consider several factors, including the risk of prejudice to the party seeking the sanctions and the availability of less drastic sanctions). Arguably, the bankruptcy court could have imposed a less severe sanction – *i.e.*, order Mr. Hoffman to appear for a second deposition – and then, if Mr. Hoffman again failed to appear, there would be a basis for a default. These arguments, however, ultimately have no traction because, when Mr. Hoffman made his late appearance before the bankruptcy court on the motion to strike (*i.e.*, after Mr. Lloyd's counsel had left the courtroom and after all other matters on calendar had been concluded), the bankruptcy court essentially told Mr. Hoffman that it was willing to reconsider the sanction upon an application for relief from Mr. Hoffman but Mr. Hoffman never filed any such motion for relief. Given these circumstances, the Court is confident in concluding that a less drastic sanction would have been futile. *Cf. id.* (stating that "[t]he record fully supports the court's conclusion that to repeat the imposition of lesser sanctions would be unavailing"). The Court also notes that a default sanction in favor of Mr. Lloyd was appropriate because, without a sanction, Mr. Lloyd would have been prejudiced. That is, Mr. Lloyd would have been prevented from litigating his case. Mr. Hoffman was the primary alleged wrongdoer in the case; the bulk of the damages sought by Mr. Lloyd were against Mr. Hoffman. Thus, the deposition of Mr. Hoffman was critical and not just an ancillary matter. Accordingly, exercising de novo review, the Court concludes that the entry of default against Mr. Hoffman was appropriate.

To the extent Mr. Hoffman argues that there is a basis to set aside the default, the Court finds this position untenable. Mr. Hoffman has not established that there is good cause to aside the

1  default. *See* Fed. R. Civ. P. 55(c) (requiring good cause to set aside a default). Under Ninth Circuit
2  precedent, a court may deny a motion to set aside a default where the defendant's culpable conduct
3  led to the default. *See Franchise Holding II, LLC v. Huntington Rest. Group, Inc.*, 375 F.3d 922,
4  925-26 (9th Cir. 2004). Here, Mr. Hoffman's default was not the result of neglect but rather was a
5  willful and deliberate choice as evidenced by his failure to move the bankruptcy court to reconsider
6  the entry of default, even after being explicitly advised by the court of this potential remedy. *See*
7  *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697-98 (9th Cir. 2001) (explaining that a
8  defendant's conduct is culpable where there is an intentional failure to answer and that intentional
9  means willful, deliberate, or bad faith).

E.  Norcal

In his third objection, Mr. Hoffman challenges the proposed finding of the bankruptcy court that he owned and controlled Norcal. *See* Docket No. 1, Ex. 5 (USBC Docket No. 239) (Prop. FF&CL at 16 & n.6). Implicitly, Mr. Hoffman makes this challenge as a way to contest the exemplary damages award proposed by the bankruptcy court. As noted above, the bankruptcy court concluded that exemplary damages were warranted because Mr. Hoffman took out a sham loan from Norcal, a company that he owned and controlled, in order to make it more difficult for Mr. Lloyd to exercise the option to repurchase the Elizabeth Street property.

The Court concludes that this objection lacks merit. As discussed above, default was properly entered against Mr. Hoffman. Accordingly, as the bankruptcy court noted, all-well pled allegations in Mr. Lloyd's pleadings are taken as true, including the allegation that Mr. Hoffman owned and controlled Norcal.[6] *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (stating that "'[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true'"). Furthermore the evidence submitted by Mr. Hoffman to demonstrate his lack of ownership and control is unavailing. The document simply reflects who Norcal's officers are, *see* Docket No. 1, Ex. 7 (USBC Docket No. 241) (Obj., Ex. C); that Mr. Hoffman is not listed as an officer does not preclude

---

[6] *See* USBC Docket No. 158 (FAC ¶ 24).

1  him from ownership of the corporation (*i.e.*, from being a shareholder) or, for that matter, control of
2  the corporation.

3  F.     Mr. Lloyd's Memorandum in Support of Default Prove-Up Hearing on Damages

4        In his fourth objection, Mr. Hoffman essentially challenges the entirety of the bankruptcy
5  court's proposed findings and conclusions on the basis that, prior to the prove-up hearing on June
6  28, 2011, Mr. Lloyd prepared and filed a memorandum in support of his claim for damages, *see*
7  USBC Docket No. 236 (memorandum), but failed to serve on him a copy of that document.
8  According to Mr. Hoffman, he was thereby deprived of the opportunity to be fully prepared to
9  defend at the prove-up hearing.

10       The Court concludes that this objection lacks merit. Mr. Lloyd's memorandum has a proof
11 of service which indicates that the document was served on Mr. Hoffman. *See id.* (proof of service,
12 reflecting service date of June 24, 2011). Even if the Court were to assume that Mr. Hoffman did
13 not actually receive the document prior to the hearing (*e.g.*, because the memorandum was served
14 only four days before the hearing), Mr. Hoffman would fare no better. Mr. Hoffman has simply
15 made a conclusory claim that, without notice of the memorandum, he was not fully prepared to
16 defend. He has not pointed to any specific content in the memorandum that would have led him to
17 defend differently. Moreover, the Court has reviewed the content of the memorandum itself and
18 fails to see anything that would have affected Mr. Hoffman's defense. The memorandum largely
19 discusses matters of which Mr. Hoffman was well aware – *e.g.*, the claims asserted in the operative
20 pleadings, the factual allegations contained therein, and the types of damages sought.

21 G.     Record for Review

22       Mr. Hoffman's final objection is not an objection to the bankruptcy court's proposed
23 findings and conclusions. Rather, it is, in essence, an objection that he has not had an adequate
24 opportunity to designate a record for this Court's review. The Court finds this argument lacking in
25 merit. Even if Mr. Hoffman was not able to designate a record for review at the time he lodged his
26 objections to the proposed findings and conclusions, *see* Bankr. L.R. 9033-1(a)(3) (providing that,
27 "[a]t the time the objection is filed, the objecting party shall file in the Bankruptcy Court a
28 designation of the record for review, which shall include a transcript of the trial or hearing in the

Bankruptcy Court"), he has since had time to rectify that problem. Indeed, it has been more than six months since he submitted his objections and he has made no effort to identify any documents that should be included as part of the record. In any event, the Court has not rejected any of Mr. Hoffman's objections based on his failure to designate a record but rather has reviewed the record in the bankruptcy proceedings on its own to arrive at the above findings and conclusions.

### III. CONCLUSION

For the foregoing reasons, the Court concludes, upon *de novo* review, that the bankruptcy court's proposed findings of fact and conclusions of law are appropriate and thereby adopts them in full as its own. In so holding, the Court rejects each of the objections made by Mr. Hoffman as lacking in merit. Accordingly, the Court finds in favor of Mr. Lloyd and against Mr. Hoffman, Norcal, Mr. Robertson, and H&B as follows:

Defendant Jeffrey Hoffman should be found liable to Plaintiff Thomas Lloyd for actual damages in regards to the Elizabeth Street and Lagunitas properties in the amount of $294,763, exemplary damages in regards to the Elizabeth Street property in the amount of $271,881, and attorneys fees in regards to the Elizabeth Street property in the amount of $275,874.

Defendant Norcal Financial should be found jointly and severally liable with Hoffman for actual damages in regards to the Elizabeth Street property in the amount of $32,627.

Defendant Asher Robertson should be found jointly and severally liable with Hoffman for actual damages in regards to the Elizabeth Street and Lagunitas properties in the amount of $236,763.

///
///
///
///
///
///
///
///

13

Defendant H&B Properties should be found jointly and severally liable with Hoffman for actual damages in regards to the Lagunitas property in the amount of $204,136.

The Clerk of the Court is instructed to enter judgment in accordance with this opinion and close the file in this case.

IT IS SO ORDERED.

Dated: July 20, 2012

_____
EDWARD M. CHEN
United States District Judge